IN THE
UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| Plaintiff, | ) | 16 CR 306-1 |
| V. | ) | |
| | ) | Judge Harry D. Leinenweber |
| BENJAMIN BIANCOFIORI, | ) | |
| Defendant. | ) | |

*DEFENDANT BENJAMIN BIANCOFIORI'S MOTION TO DISMISS THE INDICTMENT BASED ON THE FACIAL AND AS-APPLIED UNCONSTITUTIONALITY OF COUNTS 1-10*

DEFENDANT BENJAMIN BIANCOFIORI, through counsel, respectfully requests that this Court enter an Order, dismissing Counts 1-10 of the indictment against him, because these Counts violate his Due Process right to Notice of nature of the conduct that this prohibited, are vague and overbroad in their inclusion of adult women who have voluntarily chosen sex work as means of employment, and, as in this case, are applied in a way that stretches the statutory meaning and intent to address all forms of prostitution, including domestic prostitution, whether or not actual sex-trafficking is involved in the conduct.

I. Title 18, United States Code, Section 1591, is Vague and Overbroad on its face and in its application to Mr. Biancofiori, a person who associates with adult women who voluntarily engage in sex work.

    A. The statutory language of Title 18, United States Code, Section 1591, is unconstitutionally vague.

In Counts 1-10 of the second superseding indictment, Mr. Biancofiori is alleged to have conspired to violate and to have violated Title 18, United States,

1

Code, Section 1591(a) and (b)(1), part of a statute that was primarily designed to outlaw sex-trafficking of minors under the Victims of Trafficking Protection Act, most recently revised in 2008. A criminal statute may be void for vagueness if it fails to provide "the kind of notice that will enable ordinary people to understand what conduct it prohibits" or if "it may authorize and even encourage arbitrary and discriminatory enforcement." *Chicago v. Morales*, 527 U.S. 41, 56, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999). Title 18, United States Code, Section 1591(a), Sex Trafficking of Children, or by force, fraud, or coercion, provides:

(a) Whoever knowingly-

    (1) in or affecting interstate or foreign commerce, or within the special maritime and territorial jurisdiction of the United States, recruits, entices, harbors, transports, provides, obtains, or maintains by any means a person; *or*

    (2) benefits, financially *or* by receiving anything of value, from participation in a venture which has engaged in an act described in violation of paragraph (1),

knowing, or in reckless disregard of the fact, that means of force, threats of force, fraud, coercion described in subsection (e)(2), or any combination of such means *will be used* to cause the person to engage in a commercial sex act, or that the person has not attained the age of 18 years and will be caused to engage in a commercial sex act, shall be punished as provided in subsection (b).

*United States v. Jackson,* 2015 U.S. Dist. LEXIS 187064, *16-17 (N.D. Ind. Dec. 2, 2015). Section (e)2 of the Act further provides:

(2) The term "coercion" means--

- (A) threats of serious harm to or physical restraint against any person;

- (B) any scheme, plan, or pattern intended to cause a person to believe that failure to perform an act would result in serious harm to or physical restraint against any person; or

- (C) the abuse or threatened abuse of law or the legal process.

A commercial sex act is defined in section (e)(3) as "any sex act, on account of which anything of value is given to or received by any person." 18 USCS § 1591. This statutory language is problematically vague in several respects: (1) section (a)(1) applies to a broad variety of activities that of themselves are not illegal, (2) the concluding paragraph of section (a) appears to require prospective knowledge of how the "any person" in (a)(1) will be treated, whether or not the person in question is actually subjected to any of the listed means—force, threats of force, fraud, or coercion; (3) subsection (a)(2) refers to a violation of (a)(1) which includes acts that are not in and of themselves illegal; and (4) the definition of "commercial sex act" is both vague and overbroad, in that it could include within its reach such legal commercial sex acts as stripping, lap dancing, participating in the making of pornography, and other forms of real or simulated sex acts for which adult individuals may legally be paid.

  In Mr. Biancofiori's case, an additional component of both vagueness and overbreadth is introduced by the fact that the statute as written includes subsections (a)(1) and (a)(2) in the disjunctive, as alternative means of violating the statute, while the charges against Mr. Biancofiori are drafted conjunctively, providing for a seemingly unlimited number of ways in which Mr. Biancofiori could possibly have violated the statute without providing any notice as to the time frame or type of conduct in which Mr. Biancofiori allegedly actually engaged, rendering it

impossible for him either to prepare his defense, to know what he is alleged to have done, or to have conformed himself to the law as drafted in the first instance.

The purpose of the fair notice requirement is to enable the ordinary citizen to conform his or her conduct to the law. "No one may be required at peril of life, liberty or property to speculate as to the meaning of penal statutes." *Lanzetta* v. *New Jersey,* 306 U.S. 451, 453, 83 L. Ed. 888, 59 S. Ct. 618 (1939). City of Chi. v. Morales, 527 U.S. 41, 58 (U.S. June 10, 1999). Even when speech is not at issue, the void for vagueness doctrine addresses at least two connected but discrete due process concerns: first, that regulated parties should know what is required of them so they may act accordingly; second, precision and guidance are necessary so that those enforcing the law do not act in an arbitrary or discriminatory way. *See Grayned* v. *City of Rockford*, 408 U. S. 104, 108-109, 92 S. Ct. 2294, 33 L. Ed. 2d 222 (1972), *cited in* FCC v. Fox TV Stations, Inc., 567 U.S. 239, 253 (U.S. June 21, 2012).

The second Due Process concern is also implicated in this case, in that the vagueness of the language does not provide any guidance for law enforcement to use in determining whether to prosecute actual sex traffickers, or to stretch the boundaries of federal law to encompass ordinary prostitution, which is a traditional part of law enforcement powers reserved to the States.

    B.    Title 18, United States Code, Section 1591 is overbroad on its face and as applied to Mr. Biancofiori.

"The overbreadth doctrine permits the facial invalidation of laws that inhibit the exercise of First Amendment rights if the impermissible applications of the law are substantial when judged in relation to the statute's plainly legitimate sweep."

4

*Chicago v. Morales*, 527 U.S. 41, 52, 144 L. Ed. 2d 67, 119 S. Ct. 1849 (1999). The overbreadth must be substantial before a court can invalidate the statute on its face. *New York v. Ferber*, 458 U.S. 747, 769, 73 L. Ed. 2d 1113, 102 S. Ct. 3348 (1982). *See, United States v. Cote,* 2005 U.S. Dist. LEXIS 11725, *7, 2005 WL 1323343 (N.D. Ill. May 26, 2005).

This statute is overbroad with respect to its potential application to adults who are involved in the sex industry and are *not* involved either in using minors for sexual purposes or in the trafficking of individuals – a term that implies that women are lured with false promises, kidnapped, held captive, moved across borders, or otherwise caused to be involved in commercial sex acts against their will. The statute also permits law enforcement to prosecute ordinary prostitution as if it were sex trafficking with no guidelines for determining how to distinguish between the two.

Organizations that work with sex workers recognize at least three different groups of participants: sex workers by circumstance, sex workers by choice, and sex workers by coercion. The broad and vague terminology of the statute does not distinguish among these groups and leaves it to the political or ideological perspectives of law enforcement to apply the law as they see fit, which can result in arbitrary and discriminatory enforcement actions.

For example, in a 2010 Report on Human Trafficking, HIV/AIDS and the Sex Sector, the Center for Health and Gender Equity and the Center for Human Rights and Humanitarian Law at American University in Washington, D.C., found that

over the previous 10 years, while the United States supported some "excellent programs" overseas, "it has also adopted an ideologically-driven approach to the sex sector that harms women and their families, increases the vulnerability of sex workers to violence, trafficking and HIV infection, prevents health care workers from accessing sex workers, and does little or nothing to prevent trafficking. Sex workers who do not want to be "saved" are being subjected to violent raids and rescues and some of them are being arrested, abused, and deprived of their livelihood." The Report was critical of the anti-prostitution policies that are part of the United States' approach to sex trafficking, pointing to the problems of conflating sex work with human trafficking into the sex sector, an approach that focuses more on criminalizing sex work, rather than seeking to prosecute actual traffickers.

Feminist legal scholars also debate different approaches to distinguishing between sex work and trafficking, most of which turn on whether the authors view consent as meaningful in analyzing differences between prostitution and sex trafficking. *See, e.g.,* NOTE: ADULT DOMESTIC TRAFFICKING AND THE WILLIAM WILBERFORCE TRAFFICKING VICTIMS PROTECTION REAUTHORIZATION ACT, 19 Cornell J. L. & Pub. Pol'y 495, 508 (Spring 2010) [distinguishing between women who voluntarily engage in prostitution, as opposed to those who are trafficked, or coerced]; ARTICLE: FROM THE INTERNATIONAL TO THE LOCAL IN FEMINIST LEGAL RESPONSES TO RAPE, PROSTITUTION/SEX WORK, AND SEX TRAFFICKING: FOUR STUDIES IN

CONTEMPORARY GOVERNANCE FEMINISM, 29 Harv. J.L. & Gender 335, 349 (Summer 2006).

  C. Mr. Biancofiori's Right to Intimate Association is violated by the application of Title 18, United States Code, Section 1591, to unspecified conduct with adult women.

The right to intimate association "receives protection as a fundamental element of personal liberty." *Roberts v. United States Jaycees*, 468 U.S. 609, 618, 82 L. Ed. 2d 462, 104 S. Ct. 3244 (1984). HN9 The kinds of personal associations entitled to constitutional protection are characterized by "relative smallness, a high degree of selectivity in decisions to begin and maintain the affiliation, and seclusion from others in critical aspects of the relationship." *Id.* at 620. While the precise boundaries of the intimate association right are unclear, constitutional protection is not limited to familial relationships. *Bd. of Dirs. of Rotary Int'l* v. *Rotary Club of Duarte*, 481 U.S. 537, 545, 95 L. Ed. 2d 474, 107 S. Ct. 1940 (1987). Instead, the Constitution "protects those relationships . . . that presuppose deep attachments and commitments to the necessarily few other individuals with whom one shares not only a special community of thoughts, experiences, and beliefs but also distinctively personal aspects of one's life.'" *Id. (quoting Roberts*, 468 U.S. at 619-20). *United States v. Cote*, 2005 U.S. Dist. LEXIS 11725, *10-11, 2005 WL 1323343 (N.D. Ill. May 26, 2005).

  The government transgresses Mr. Bianocofiori's right to associate with adult women who are voluntarily engaged in sex work, by alleging in vague and overbroad terms that Mr. Biancofiori has violated the sex trafficking statute, requiring that he know or be involved in a venture according to which he would

7

have reason to know that the women involved were only involved because someone would use force, threats, or fraud to against them, whether, in fact, any such force, threat, or fraud was ever used.

II.     Intent of the Statute is to penalize trafficking that involves slavery, not garden variety prostitution.

The TVPA criminalizes and attempts to prevent slavery, involuntary servitude, and human trafficking for commercial gain. Congress recognized that human trafficking, particularly of women and children in the sex industry, "is a modern form of slavery, and it is the largest manifestation of slavery today." 22 U.S.C. § 7101(b)(1); see also id. at § 7101(b)(2), (4), (9), (11). Congress found that trafficking of persons has an aggregate economic impact on interstate and foreign commerce, id. § 7101(b)(12). *United States v. Evans*, 476 F.3d 1176, 1179 (11th Cir. Fla. Jan. 30, 2007).

Congress did not intend to prosecute ordinary prostitution or other forms of sex work that involved the consensual participation of adult men and women. Slavery is involuntary by definition and one cannot consent to be enslaved. This is a far different enterprise than the allegations currently pending against Mr. Biancofiori, insofar as any specific actions at all are attributed to him. From the indictment, as discussed about, it is impossible to discern what conduct Mr. Biancofiori undertook, with whom, and during what specific period of time, that violated the statute with which he has been charged.

WHEREFORE, defendant BENJAMIN BIANCOFIORI, through counsel, respectfully requests that this Court enter an Order, dismissing Counts 1-10 of the

second superseding indictment against him, because these Counts are based on a statute that is both vague and overbroad on its face and as applied to Mr. Biancofiori.

DATE: August 29, 2017    Respectfully submitted,

By:  s/Andréa E. Gambino
Attorney for Benjamin Biancofiori

Law Offices of Andrea E. Gambino
53 W. Jackson Blvd., Suite 1332
Chicago, Illinois 60604
(312) 322-0014
agambinolaw@gmail.com

<u>CERTIFICATE OF SERVICE</u>

  I hereby certify that on August 29, 2017, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which sent notification of such filing to the following:

Abigail Peluso, Esq.
Erica Ciscilla, Esq.
Assistant United States Attorney
219 S. Dearborn Street
Chicago, Illinois 60604

and I hereby certify that I have mailed by United State Postal Service or hand delivered the document to the following non-CM/ECF participants: N/A.

DATE:  August 29, 2017  Respectfully submitted,

            By: s/Andréa E. Gambino
              Attorney for Benjamin Biancofiori

Law Offices of Andréa E. Gambino
53 W. Jackson Blvd., Suite 1332
Chicago, Illinois 60604
(312)322-0014