IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>    Plaintiff,<br><br>  v.<br><br>BENJAMIN BIANCOFIORI, a/k/a "Beanz",<br><br>    Defendant. | Case No. 16 CR 306-1<br><br>Judge Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

### I. BACKGROUND

Benjamin Biancofiori ("Biancofiori" or "Defendant") was found guilty of one count of conspiring to sex traffic multiple victims by force, threats of force, fraud, and coercion in violation of 18 U.S.C. § 1594(c) Count (1); nine count of sex trafficking by force, threats of force, fraud, and coercion, in violation of 18 U.S.C. § 1591(a) and (b)(1) (Counts 2-10); two counts of attempted obstruction of the enforcement of the sex trafficking statute in violation of 18 U.S.C. § 1591(d) (pre arrest conduct) (Counts 11-12); and two counts of attempted obstruction of the enforcement of the sex trafficking statute, in violation of 18 U.S.C. § 1591(d) (post arrest conduct) (Counts 13-14). He was acquitted of attempted obstruction of the enforcement of the sex trafficking statute by certain use of social media designed to prevent victims

from speaking to law enforcement in violation of U.S.C. § 1591(d) (Count 15). Biancofiori has moved pursuant to the Federal Rules of Criminal Procedure for a judgment of acquittal, or in the alternative, for a new trial.

## II. MOTION FOR JUDGMENT OF ACQUITTAL

Defendant's Motion for Judgment of Acquittal is based on multiple grounds: (1) there was a fatal variance between the indictment and the evidence adduced at trial; (2) three of the counts involving alleged victims, Collins, Schiro, and Clausen, were barred by the statute of limitations; (3) Defendant was denied his right to confront certain of the victims who did not testify at the trial; (4) he was denied due process and his right to confront victims Schiro and VanPelt who were deceased at the time of trial; and (5) the erroneous admission of Defendant's post-arrest interview which was irrelevant hearsay.

### A. The Variance Contention

This contention is based on Defendant's argument that the evidence disclosed multiple conspiracies while the indictment only alleged one. Defendant supports this by arguing that the evidence showed at least three (3) separate conspiracies all of which involved different women, co-defendants, and different periods of time. Thus there could not be one overarching conspiracy. The problem with this argument is that, assuming that there were three

separate periods of time involving different women, nevertheless they all involved the Defendant, the so-called "hub" while the women and the co-defendants constituted the spokes. In *United States v. DeKelaita,* 875 F.3d 855, 858 (7th Cir. 2017) the defendants, as here, argued that an indictment charging a single conspiracy to defraud the government on asylum applications that involved the defendant lawyer and nine asylum applicants over a three-year period constituted a fatal variance. The Seventh Circuit affirmed the conviction stating that where the prosecution is of a hub:

> there is no need to distinguish between a single conspiracy and multiple conspiracies . . . because no matter the relationship between alleged conspiracies, the hub is involved in each. Consequently, there is no danger of wrongfully transferring guilt based on conduct from an unconnected conspiracy.

The evidence in his case clearly showed that the Defendant was involved in each of the alleged separate conspiracies as outlined in his Motion.

Defendant urges the Court to grant the Motion based on the case of *United States v. Fahra,* 643 F. App'x 480, 490 (6th Cir. 2016) in which the court did find a fatal variance based on the existence of multiple separate conspiracies where the indictment only alleged one massive conspiracy. The *Fahra* case, however, is distinguishable because the defendants in that case were at most

"spokes" of a single conspiracy and the court was well aware of the prejudice caused by the "spillover" effect of a large number of improperly joined co-defendants. However, as pointed out in *United States v. DeKelaita,* in a case against the hub, there is no such danger of guilt transference. Accordingly, there is no basis for the Motion based on this ground.

### B.  The Statute of Limitation Contention

In a way this contention is tied up in the previous one because it is based on the argument that there was a separate conspiracy involving only victims Collins, Schiro, and Causen, which started in 2011. Based on the Court's holding that there was only one conspiracy there is no basis for this argument. However, as the Government points out, in addition there is no statute of limitations for a § 1591 charge. *See,* 18 U.S.C. § 3299. Accordingly, there is no basis for a judgment of acquittal based on a statute of limitations argument.

### C.  The Confrontation and Due Process Contentions

The Sixth Amendment of the United States Constitution gives to a defendant in a criminal case the right to confront his accuser. The basis for Defendant's confrontation argument is that a number of the alleged victims and a co-defendant were not called as witnesses by the Government. In addition, two of the victims, Schiro and Rodway, were deceased at the time of the trial.

Defendant contends that he was unable to cross-examine them to determine their truthfulness. He relies on *Crawford v. Washington,* 541 U.S. 36 (2004). This case says that out of court statements of witnesses that are testimonial are banned under the confrontation clause, unless witnesses are unavailable and defendants had prior opportunity to cross-examine them. However, the Sixth Amendment ban only applies to "witnesses" against the accused, *i.e,* those that "bear testimony." Testimony in turn, is typically "[a] sworn declaration or affirmation made for the purpose of establishing or proving some fact." *Id.* In this case, the Court was very careful not to admit any "testimonial" evidence that involved any non-testifying person. Defendant does not point to any such testimonial evidence. Accordingly, the confrontation clause does not provide a basis for a judgment of acquittal.

### D. Defendant's Post Arrest Interview

Defendant argues that his post-arrest interview should not have been admitted as irrelevant hearsay. The problem with this contention is that the statement of a defendant (since he is a party) is not hearsay if it is offered by the Government. FED. R. OF EVID. 801(d)(2)(A). *United States v. Reed,* 227 F.3d 763, 769-770 (7th Cir. 2000). The other problem is that it was obviously not offered for the truth as Defendant himself points out it was not truthful. The only issue was whether it was relevant. The fact

that the Defendant's statement was shown to be so demonstrably false was probative of his veracity and consciousness of guilt. This contention therefore does not provide a basis for a verdict of acquittal.

### III. <u>MOTION FOR NEW TRIAL</u>

Defendant, in his Motion for a New Trial, incorporates the previous contentions in addition to the following: (1) The Court erred in admitting the testimony from Agent James Hardie who testified as an expert in "sex trafficking;" (2) that the Court erred in granting a Motion *in Limine* preventing Defendant from cross-examining the victims about their employment in the sex industry prior to and after their relationships with Defendant; (3) the Court erred in admitting text messages between individuals that constituted inadmissible hearsay; (4) the Court erred in admitting Defendant's "unfinished" manuscript regarding his life as a pimp; and (5) disallowing "impeaching" information about Ashley Lawrence and other matters that Defendant considered to be relevant to his defense.

#### A. Agent Hardie's Testimony

Defendant argues that Agent Hardie's testimony as an expert on the subject of sex trafficking should have been barred as it failed to meet the requirements of Federal Rule of Evidence 702 and *Daubert v. Merrell Dow Pharms., Inc.*, 509 U.S. 579 (1993).

Defendant's main gripe is that Hardie's work mostly involved sex trafficking of children. However, as pointed out by the Government, Hardie has been admitted as an expert witness in a number of similar cases around the United States. *See, United States v. Jackson,* 2017 WL2362351, at*4 (D.S. Car., May 31, 2017) (finding Agent Hardie was qualified to testify as an expert in sex trafficking, that his testimony would be relevant in giving the jury the context to evaluate testimony); *United States v. Wiloughby,* 742 F.3d 229, 238 (6th Cir. 2014) (finding no abuse of discretion in admitting Agent Hardie as qualified to give expert testimony about the methods pimps use to control their victims); *United States v. Jackson,* 299 F.R.D. 543, 547 (W.D. Mich. 2014) (finding no abuse of discretion in admitting Agent Hardie as qualified to give expert testimony about means used to recruit and control child victims); and *United States v. Bryant,* 654 F. App'x 807, 814 (6th Cir. 2016) (finding no abuse of discretion in admitting Agent Hardie as qualified to testify as expert witness in sex trafficking case), *cert. denied,* 137 S.Ct. 412 (2016). The purpose of his testimony was to inform the jury about the common dynamics that occur in the operation of the sex trafficking industry. This was especially important as the defense consisted mainly of pointing out that the victims were adults and were presumably free to leave if they found the atmosphere toxic. The

Court finds that there was no error in admitting the testimony of Hardie.

### B. Excluding Cross-Examination of the Victims as to Their Sexual History

The Defendant argues that he sought to examine the victims about their employment in the commercial sex industry, not for establishing any predisposition, but to show knowledge, *modus operandi,* intent and lack of mistake as to engaging in the sex industry. He also sought to show that they engaged in consensual sex with him and the other victims. The Court ruled *in limine* that pursuant to Rules of Evidence 412 and 403 that the sexual history of the victims could not be delved into because the most obvious reason to do so would be to show that the victims had a propensity for engaging in commercial sex. The Court did allow evidence as to sexual activity engaged in by the victims with each other and with the Defendant. Defendant was allowed to elicit from several of the victims that they harbored jealous feelings when Defendant showed particular interest in one of the victims to the exclusion of the others. The cases of *United States v. Cephus,* 684 F.3d 703, 708 (7th Cir. 2012) and *United States v. Groce,* Slip Opinion, 7th Cir., May 23, 2018 are on point. In those cases, evidence of pre-trafficking prostitution activities by the victims were also excluded on both relevancy and Rule 412

grounds.  As with *Cephus* and *Groce,* the fact that a victim had been a prostitute previously was not relevant as to whether she was threatened, beaten, and otherwise mistreated by Defendant. There was no error in excluding sex history evidence.

### C. Admission of Text Messages

The Defendant argues that the Court erred in admitting certain text messages.  He, however, only put forth one example. There was no objection to the admission of the text messages so this contention does not warrant a new trial.

### D. Introduction of Defendant's Manuscript

It appears that the basis for this contention of error is that, by admitting Defendant's manuscript of the history of his life as a pimp, he was compelled to testify against himself. However, the record will reveal that the Court initially denied the Government's request to admit the transcript on prejudicial grounds, but that the Court stated that it would admit the manuscript only if Defendant chose to testify in his own defense, and then the Government could use it in cross-examination. The Defendant had previously argued that if the Court admitted it, he would be forced to testify in his own defense to explain that the document was fiction.  The Court acceded to his argument but when Defendant decided to testify in his own defense, the Court admitted the manuscript and it was used in cross-examination.  The

Defendant forcefully told the jury that it was fiction and he wrote it with the idea of publishing it and perhaps being able to sell the movie rights to Hollywood. The document was not obviously fiction and served to corroborate testimony of certain of the victims who were named in the manuscript. The document was clearly admissible as an admission of a party under Rule 801(d)(2)(A). There was no error in its admission.

### E. Exclusion of Impeaching Information

The Defendant threw a scattershot at the Motion for a New Trial by mentioning a number of matters that he considered relevant that were excluded. However, he did not develop any of these items and thus they are waived.

### IV. CONCLUSION

For the reasons stated herein, Defendant's Motion for a Judgment of Acquittal is denied. Defendant's Motion for a New Trial is denied.

**IT IS SO ORDERED.**

　　　　　　　　　　　　　　　　　　　　　　　　
Harry D. Leinenweber, Judge
United States District Court

Dated: 6/1/2018